

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-09-458-CV

THE CITY OF FORT WORTH, AND                      APPELLANTS
THE CITY OF FORT WORTH
FIREFIGHTERS' AND POLICE
OFFICERS' CIVIL SERVICE
COMMISSION

V.

SAMUEL DAVIDSAVER                                 APPELLEE

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

Appellants City of Fort Worth and City of Fort Worth Firefighters' and Police Officers' Civil Service Commission bring this interlocutory appeal challenging the trial court's order denying their plea to the jurisdiction. In a single issue, appellants argue that appellee Samuel Davidsaver's claims

stemming from the scoring of his police officer promotional exam may be raised only by the Fort Worth Police Officers Association and that he lacks standing to pursue these claims individually in district court. Because we agree that Officer Davidsaver does not have standing to sue appellants, we reverse the trial court's order and dismiss Officer Davidsaver's claims against appellants for lack of subject matter jurisdiction.

## II. BACKGROUND

Officer Davidsaver, a sergeant with the Fort Worth Police Department, sat for the department's promotional exam for the rank of lieutenant on September 22, 2009. According to Officer Davidsaver, the notice of the exam published by the City of Fort Worth Firefighters' and Police Officers' Civil Service Commission (the "Commission") stated that bonus points for seniority would be added to each candidate's exam score pursuant to the guidelines of the local government code. However, when the final test scores were posted, his bonus points were calculated instead according to the procedures contained in the Meet and Confer Agreement between the City of Fort Worth and the Fort Worth Police Officers Association (the "Agreement"), not the local government code. Officer Davidsaver contends that as a result, he ranked lower on the list of promotion candidates than he would have ranked had the local government code's bonus points system been applied.

2

Believing that his final test score had been detrimentally affected by the change in bonus score calculation procedures, Officer Davidsaver and his attorney sent a letter to the Fort Worth Police Officers Association (the "Association") on October 19, 2009, asserting that seniority bonus points should have been allocated to him under the local government code instead of the Agreement. The Association forwarded Officer Davidsaver's complaint to its Dispute Resolution Committee, which informed him that it would meet to review his complaint on November 11, 2009.

Before this meeting could take place, Officer Davidsaver sued the City, the Commission, and the Association, requesting a judgment declaring that the provisions of the local government code, and not the Agreement, applied to his promotional exam. Officer Davidsaver also requested a temporary restraining order and an injunction preventing the defendants from applying the Agreement's provisions to the exam results and from promoting any candidates on the basis of exam scores calculated under the Agreement's provisions. The City and the Commission filed a plea to the jurisdiction challenging Officer Davidsaver's standing to sue on November 5, 2009. The Association's Dispute Resolution Committee held its meeting on November 11, 2009, and it sent Officer Davidsaver's counsel a letter the next day informing him that it had voted against taking any further action on Officer Davidsaver's complaint. The

3

trial court denied the City and the Commission's plea to the jurisdiction in a written order dated December 7, 2009.[1] The City and the Commission now appeal.[2]

## III.  LAW AND APPLICATION TO FACTS

### A.      Local Government Code and Collective Bargaining Agreements

Chapter 143 of the local government code governs municipal civil service for firefighters and police officers in Texas. Tex. Loc. Gov't Code Ann. §§ 143.001–.363 (Vernon 2008 & Supp. 2009). Its purpose is "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." *Id.* § 143.001(a). A fundamental principle of civil service is that appointments must be made according to merit and fitness. *Klinger v. City of San Angelo*, 902 S.W.2d 669, 671 (Tex. App.—Austin 1995, writ denied). One critical aspect of civil service protection is the right to seek promotion by way of competitive examinations. *Lee v. City of Houston*, 807 S.W.2d 290, 295 (Tex. 1991). Chapter 143 provides a system for classification of police

---

[1] That same day, the trial court also issued written orders denying Officer Davidsaver's applications for a temporary restraining order and a temporary injunction.

[2] The Association did not join appellants in filing their plea to the jurisdiction and is not a party to this appeal.

4

officers through the administration of promotional examinations. *See* Tex. Loc. Gov't Code Ann. §§ 143.021–.038.

Chapter 143 also allows a municipality the size of Fort Worth to exercise local control over terms and conditions of police officer employment. *See id.* §§ 143.301–.313.[3] This local control, however, extends only to those terms and conditions on which the city and an association that is recognized as the sole and exclusive bargaining agent for all police officers in the municipality agree. *See id.* § 143.303(a). On November 16, 2006, the Fort Worth City Council adopted a proposition authorizing the City to recognize an employee association as a sole and exclusive bargaining agent for the municipal police officers and authorizing the City to make agreements with the employee association as provided by state law.[4] Finally, on January 30, 2007, the city

---

[3] This subchapter of Chapter 143, Subchapter I, applies to municipalities with a population of 460,000 or more that operate under a city manager form of government. The parties do not dispute that Fort Worth qualifies. *See* U.S. Census Bureau, U.S. Dep't of Commerce, *Profiles of General Demographic Characteristics: 2000 Census of Population and Housing: Texas* 713 (2001), *available at* http://www.census.gov/prod/cen2000/dp1/2kh48.pdf (reporting Fort Worth's total population as 534,694); Fort Worth, Tex., Code Part I, ch. 5, § 1 (1986) (requiring the city council to appoint a city manager, who shall be the chief administrative and executive officer of the city).

[4] As required by the local government code, the resolution adopting this proposition was preceded by an election at which all qualified voters of Fort Worth could vote on the proposition. The city council canvassed the results of the election and found that the proposition had passed by a majority of the

5

council passed a resolution recognizing the Association as the sole and exclusive bargaining agent for all Fort Worth police officers. *See id.* § 143.304(a).[5]

B.    The Meet and Confer Agreement

Thereafter, on November 11, 2008, the Association and the City signed the Meet and Confer Agreement. Article 15 of the Agreement addresses promotions in officer classification, and section 4 of that article specifically addresses additional points added to promotional exam test scores for the ranks of lieutenant and captain according to the level of the candidate's education and to the candidate's number of years in rank—one point for each complete year that the officer has served in the current classification. Section 143.033 of the local government code, however, adds one point for each year of seniority as a classified police officer in the department without regard to

---

votes cast. *See id.* § 143.3015.

[5] Section 143.304 provides that the public employer may recognize an association that submits a petition signed by a majority of the paid police officers in the municipality, excluding the head and assistant department heads of the department, as the sole and exclusive bargaining agent for all of the covered police officers unless recognition of the association is withdrawn by a majority of the covered police officers. *See id.* This resolution recited that the Association had presented a petition, validly signed by a majority of the paid police officers, requesting the Association to be recognized as the sole and exclusive bargaining agent on behalf of all Fort Worth police officers. Fort Worth, Tex., Res. 3451-01-2007 (Jan. 30, 2007).

number of years in each rank, and it does not add points for educational degrees. *See id.* § 143.033(b). Officer Davidsaver argued in his letter to the Association and in his lawsuit that under the terms of Article 15, the Agreement's point system was not yet in effect at the time he took the exam on September 22, 2009; therefore, the point system of the local government code should have been applied to his exam score.[6]

C.    Standing to Sue Under the Agreement

In a single issue, appellants contend that the trial court has no jurisdiction over Officer Davidsaver's suit because only the Association has the right to assert claims against appellants that arise under the Agreement. They argue that because Officer Davidsaver is not a party to the Agreement, he has no standing to complain of a breach of the Agreement or to demand enforcement

---

[6] ... Article 15, section 3B states,
Effective upon the expiration or earlier exhaustion of <u>any</u> promotional eligibility list for sergeant, Lieutenant[,] or Captain in existence on October 1, 2009, an Officer will not be eligible to take a promotional eligibility examination for promotion to sergeant, Lieutenant[,] or Captain unless the Officer has served in the Department in the next lower classification . . . for at least three (3) years immediately before the date the promotional eligibility examination is held.
Officer Davidsaver's position below was that the September 2009 exam promotional eligibility list had not expired or been exhausted before October 1, 2009, so the Agreement should be interpreted to read that the September 2009 exams would be scored according to the local government code, not the Agreement.

7

of its provisions.  Appellants assert that the trial court failed to recognize Officer Davidsaver's lack of standing to challenge actions taken under the Agreement and therefore erred by denying their plea to the jurisdiction.

### 1.    *Standard of Review*

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of the action.  *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).  Whether a trial court has subject matter jurisdiction and whether a pleader has alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction are questions of law that we review de novo.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).  The determination of whether a trial court has subject matter jurisdiction begins with the pleadings.  *Miranda*, 133 S.W.3d at 226.  The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction.  *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.—Fort Worth 2003, pet. denied).  We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings.  *See Miranda*, 133 S.W.3d at 226, 228; *City of*

8

*Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.—Fort Worth 2004, pet. denied).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (confining the evidentiary review to evidence that is relevant to the jurisdictional issue). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder. *Id.* at 227–28; *Bland*, 34 S.W.3d at 555. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 227–28; *Bland*, 34 S.W.3d at 555.

2.    *Interpreting the Intent of the Agreement*

Officer Davidsaver argues that the trial court did not err by denying appellants' plea to the jurisdiction because the Agreement itself contemplates

that police officers have standing under the Agreement.  He points to Article 19 of the Agreement, titled "Complete Agreement," which reads as follows:

> Section 1.  The Parties agree that each has had the full and unrestricted right and opportunity to make, advance, and discuss all matters properly within the province of bargaining for a Meet and Confer agreement.  This Agreement constitutes the full and complete Agreement of the Parties and there are no others, oral or written, except as herein contained.  No alteration, amendment or variation of this Agreement's terms shall bind the Parties unless made, executed and voted on by the Parties as required by Subchapter I of chapter 143 of the TLGC.  A failure of the City *or Officer*[7] to insist in any one or more instances upon performance of any terms or condition of this Agreement shall not be considered as a waiver or relinquishment of the right of the City or the Association to future performance of any such term or condition, and the obligations of the City and the Association to such future performance shall continue in full force and effect.  [Emphasis supplied.]

Officer Davidsaver contends that the plain meaning of this provision gives police officers the authority to insist upon the performance of the Agreement, so police officers must have standing to sue under the Agreement.

Our primary concern when interpreting a contract is to ascertain and give effect to the parties' intent. *Perry Homes v. Cull*, 258 S.W.3d 580, 606 (Tex. 2008), *cert. denied*, 129 S. Ct. 952 (2009).  We therefore focus on the

---

[7] ... The Agreement defines an "Officer" as a sworn police officer employed in the City of Fort Worth Police Department who is covered by the Agreement pursuant to Subchapter I of Chapter 143 of the local government code.  *See* Section III.A., *supra*.

10

language used in the contract because that is the best indication of the parties' intent. *See id.* We examine the entire contract in an effort to harmonize and effectuate all of its provisions so that none are rendered meaningless. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Therefore, we do not give controlling effect to any single provision; instead, we read all of the provisions in light of the entire agreement. *See id.*

The Agreement itself is clear: the definition of "Parties" refers only to the City and the Association, not to police officers.[8] The Agreement's preamble states that the Agreement is entered into by the City and the Association and that the Agreement's "intent and purpose" is "to achieve and maintain harmonious relations between the Parties and discuss issues of mutual concern." The Agreement also provides a specific dispute resolution procedure "to provide a just and equitable method for resolving disagreements between the Parties regarding the interpretation of the provisions of this Agreement." Article 8 of the Agreement, which details this dispute resolution procedure, provides that the first step of the procedure is set in motion by a police officer's submitting a written dispute related to the interpretation of the Agreement to the Association. The Dispute Resolution Committee then meets to decide

---

[8] The Agreement specifies that "'Party' or 'Parties' means the City of Fort Worth and the Fort Worth Police Officers' Association."

11

whether such a dispute actually exists; if the committee decides that the dispute does exist, then the Association prepares a formal written grievance and proceeds to step two of the dispute resolution procedure.[9]

Examining the Agreement as a whole, as we must, we hold that the parties to the Agreement did not intend to give nonparty, individual police officers standing to sue under the Agreement. The dispute resolution procedure for resolving disagreements regarding the Agreement's interpretation addresses disagreements between the Parties—that is, the Association and the City—and not disagreements between individual police officers and the City. The fact that Article 19 contemplates that a police officer may fail to insist upon the Agreement's performance does not automatically lead to a conclusion that the parties must have intended police officers to have standing. Rather, the mention of "Officer" in Article 19 is merely a recognition that dispute resolution proceedings under Article 8 can be instituted by an individual police officer's written dispute, but even if no written dispute is submitted by a police officer,

---

[9] ... In step two, the Association delivers its written grievance to the chief of police; in step three, the Association delivers it to the civil service director, who then forwards it to the city manager. If the dispute remains unresolved, the next step is binding arbitration. *See* Tex. Loc. Gov't Code Ann. § 143.306(b) (stating that an agreement between a public employer and an association "may establish a procedure by which the parties agree to resolve disputes related to a right, duty, or obligation provided by the agreement, including binding arbitration on interpretation of the agreement").

12

that lack of submission does not operate to waive any Party's right to insist upon performance. Therefore, reading Article 19 in light of the entire agreement and not giving controlling effect to any single provision, we conclude that the Agreement does not give standing to individual police officers. *See Seagull Energy*, 207 S.W.3d at 345; *see also City of Houston v. Williams*, 290 S.W.3d 260, 270–71 (Tex. App.—Houston [14th Dist.] 2009, pet. granted) (holding that individual fire fighters did not have standing to sue for alleged breaches of an agreement between the fire fighters' association and the city).

### 3. *Interpreting the Intent of the Local Government Code*

Officer Davidsaver also argues that the local government code gives him standing to sue because, regardless of the Agreement's dispute resolution procedures, Subchapter I vests the district court with jurisdiction over his dispute as follows:

> The district court of the judicial district in which the municipality is located has full authority and jurisdiction on the application of either party aggrieved by an act or omission of the other party related to a right, duty, or obligation provided by a written agreement . . . . The court may issue proper restraining orders, temporary and permanent injunctions, or any other writ, order, or process, including a contempt order, that is appropriate to enforce the agreement.

Tex. Loc. Gov't Code Ann. § 143.306(c). But the very next section, titled "Agreement Supersedes Conflicting Provisions," prioritizes the terms of a

13

written agreement between a public employer and an association over the terms of the statute:

>   (a) An agreement under this subchapter supersedes a previous statute concerning wages, salaries, rates of pay, hours of work, or other terms and conditions of employment to the extent of any conflict with the statute.

>   (b) An agreement under this subchapter preempts any contrary statute, executive order, local ordinance, or rule adopted by the state or a political subdivision or agent of the state, including a personnel board, a civil service commission, or a home-rule municipality.

>   (c) An agreement under this subchapter may not diminish or qualify any right, benefit, or privilege of an employee under this chapter or other law unless approved by a majority vote by secret ballot of the members of the association recognized as a sole and exclusive bargaining agent.

*Id.* § 143.307. Officer Davidsaver acknowledges section 143.307 but asserts that the legislature could not have intended to construct a statute so that one section may overrule the immediately preceding section.

In construing statutes, we ascertain and give effect to the legislature's intent as expressed by the statute's language. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). When the text is clear, it is determinative of that intent, *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g), and we give meaning to the language consistent with other provisions in the statute, *Tex. Dep't of Transp. v. City of Sunset Valley*,

14

146 S.W.3d 637, 642 (Tex. 2004). Our practice when construing a statute is to recognize that the words that the legislature chooses should be the surest guide to legislative intent. *Entergy*, 282 S.W.3d at 437. We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Hughes*, 246 S.W.3d at 625–26. We also presume that the legislature intended a just and reasonable result by enacting the statute. *Id.* at 626 (citing Tex. Gov't Code Ann. § 311.021(3) (Vernon 2005)).

We disagree with Officer Davidsaver's contention that section 143.306 authorizes suit in district court regardless of the Agreement's terms to the contrary. The text of section 143.307 plainly gives the City and the Association the authority to modify statutory terms and conditions of employment by agreement. Under this section, a validly executed agreement supersedes any conflicting statutory provisions and preempts any contrary statute. Further, the statute expressly states that "[a] municipality *may not be denied local control* over . . . terms and conditions of employment, or other personnel issues on which the public employer and an association that is recognized as the sole and exclusive bargaining agent for all fire fighters or police officers in the municipality agree." Tex. Loc. Gov't Code Ann. § 143.303(a) (emphasis added). If the City and the Association cannot agree

15

on how to modify a particular term or condition of employment, then that term or condition remains governed by applicable statutes, local ordinances, and civil service rules. *See id.*

In other words, the clear text of these two sections shows that the legislature's intent was to enact a statute that established default terms and conditions of police officer employment but also granted local governments and police officer associations the power to modify those terms by mutual agreement. It is not an absurd result to recognize the legislature's intent to allow a city to exercise some local control over police officer employment and to allow police officers, through an association serving as their sole and exclusive bargaining agent, to have some input in the process.[10] We therefore conclude that while section 143.306 states that the district court has "full authority and jurisdiction" over a suit on the Agreement, it does not operate to grant the trial court jurisdiction over Officer Davidsaver's cause of action in this

---

[10] Indeed, proponents of the law pointed out that giving cities local control through negotiated agreements "could help both city management and city employees by establishing principles or guidelines that would not have to be revisited annually or with changing administrations and, in doing so, could help stabilize the budget process and other city deliberations." House Research Org., Bill Analysis, Tex. S.B. 863, 74th Leg., R.S. (1995). Furthermore, "collective bargaining is a legitimate form of negotiation[,] and associations can represent important employee and public priority viewpoints that may be overlooked even by the most conscientious city manager." *Id.*

16

case because the plain language of section 143.307 clearly allows the Agreement's arbitration provision to preempt the statute's authorization of suit in district court. *See id.* §§ 143.306–.307.

Similarly, we reject Officer Davidsaver's argument that the district court has jurisdiction in this case because the local government code does not convey jurisdiction over his dispute to the Dispute Resolution Committee. Officer Davidsaver is correct that the local government code does not specifically designate the Dispute Resolution Committee as the entity with primary or exclusive jurisdiction over his dispute; rather, it is Article 8 of the Agreement that gives the Dispute Resolution Committee the power to evaluate a police officer's complaint and decide whether the Association should escalate the dispute to the next step in the dispute resolution procedure. But the Agreement receives its authorization to establish this dispute resolution procedure as an alternative to lawsuits in district court from the local government code itself. *See id.* Accordingly, we conclude that the local government code does not give Officer Davidson standing to bring this dispute in district court.

D.  Standing to Sue Because of the Association's Alleged Breach of Duty of Fair Representation

Even if Officer Davidsaver has failed to show that either the Agreement or the local government code established his standing to sue, he may still

17

survive a plea to the jurisdiction if he prevails on his argument that the Association, as his bargaining agent, breached its duty of fair representation in its handling of his grievance. *See McNair v. U.S. Postal Serv.*, 768 F.2d 730, 735 (5th Cir. 1985) (stating that if a union has breached its duty of fair representation, an employee's right to seek redress in court is not foreclosed by the results of the grievance process). A union retains considerable discretion in processing the grievances of its members, but it must represent all employees fairly in its enforcement of a collective bargaining agreement. *Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989). A breach of this duty of fair representation occurs only when the union's conduct toward an individual member "is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 916 (1967).[11]

---

[11] The parties apparently assume that federal law applies to Officer Davidsaver's argument. State law causes of action for violation of a collective bargaining agreement are displaced by section 301 of the Labor Management Relations Act of 1947. 29 U.S.C.A. § 185(a) (West 1998); *Metro. Transit Auth. v. Burks*, 79 S.W.3d 254, 256–57 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Further, a labor organization's duty of fair representation is a statutory one imposed by the National Labor Relations Act. 29 U.S.C.A. §§ 151–69 (West 1998); *Vaca*, 386 U.S. at 177, 87 S. Ct. at 910. However, the City is specifically exempted from both these acts, so it is questionable whether this statutory duty extends to the Association. *See* 29 U.S.C.A. §§ 142(3), 152(2) (both excluding "any State or political subdivision thereof" from the statutes' definition of "employer"), 152(5) (defining a labor organization as one that deals with "employers").

Regardless, we agree with the concept that a union's duty of fair

Because a union has discretion in handling its individual members' complaints, an employee has no absolute right to have his grievance taken to arbitration or to any other level of the grievance process. *Landry*, 880 F.2d at 852. An employee does, however, have the right to expect that his employer will not "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca*, 386 U.S. at 191, 87 S. Ct. at 917. Thus, the duty of fair representation imposes an obligation on a union to investigate a grievance in good faith and to prosecute a grievance with reasonable diligence unless it decides in good faith that the grievance lacks merit or for some other reason should not be pursued. *Landry*, 880 F.2d at 852. The critical question in determining whether a union has breached its duty of fair representation is whether its conduct was arbitrary, discriminatory, or in bad faith, so that it

---

representation "arises by implication as a necessary corollary to the right of exclusive representation." *Bowman v. Tenn. Valley Auth.*, 744 F.2d 1207, 1212 (6th Cir. 1984) (holding that a federal corporation employees' union has a federal common law duty of fair representation identical to that of a union whose members all work for a private employer), *cert. denied*, 470 U.S. 1084 (1985). Accordingly, we may look to the well-developed body of federal labor law for guidance in connection with Officer Davidsaver's allegations of breach of the Association's duty of fair representation. *See Flores v. Metro. Transit Auth.*, 964 S.W.2d 704, 707 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (applying the federal statute of limitations to a claim against a public employer, even though the public employer was exempt from federal labor acts, because the claim involved interpretation of a labor agreement and strongly resembled a federal unfair labor practices charge).

undermined the fairness or integrity of the grievance process. *Id.* (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S. Ct. 1048, 1058 (1976)).

Accordingly, to survive appellants' plea to the jurisdiction, Officer Davidsaver was required to plead facts affirmatively showing that the Association's handling of his grievance was arbitrary, discriminatory, or in bad faith. Officer Davidsaver does not allege that the Association or its Dispute Resolution Committee was hostile toward him or that he was treated unfairly during the dispute resolution proceedings. Instead, he points solely to the Association's refusal to file his dispute as a formal grievance as evidence establishing a breach of its duty of fair representation, claiming that the Association "failed to represent the interests of Davidsaver in any way" and "refused to become involved in the grievance process" for him by declining to escalate his complaint.

The decision whether to escalate Officer Davidsaver's complaint, however, was within the Association's discretion. *See Landry*, 880 F.2d at 852. Furthermore, the only evidence in the record of the manner in which the Association handled Officer Davidsaver's complaint shows that it properly followed the Agreement's dispute resolution procedure. It notified Officer Davidsaver of the date and time that the Dispute Resolution Committee would

20

meet to review his dispute; it encouraged him to appear at the meeting and present his dispute in person to the committee; it allowed him to be represented by his counsel at the meeting; it considered his statement as well as exhibits presented by his counsel; it provided all committee members with copies of his original written dispute, the exhibits, and the Agreement; and then, after reviewing the information and deliberating, it took a vote on the issue of whether to prepare a formal written grievance for the police chief.  In light of these undisputed facts, the Association's decision not to file a formal written grievance, standing alone, is insufficient to establish that its conduct was arbitrary, discriminatory, or in bad faith.  Accordingly, we conclude that the evidence fails to raise a fact question on the issue of breach of the Association's duty of fair representation and hold that Officer Davidsaver has failed to establish standing under this theory as well.[12]  *See Miranda*, 133 S.W.3d at 227–28; *Bland*, 34 S.W.3d at 555.

---

[12] Appellants also assert that the trial court had no jurisdiction over Officer Davidsaver's claims because he had not exhausted the Agreement's dispute resolution process before filing suit.  Because we have determined that the trial court had no jurisdiction because Officer Davidsaver lacked standing to sue, we need not reach this argument.  *See* Tex. R. App. P. 47.1.

## IV.  CONCLUSION

Because the pleadings and the undisputed evidence show that Officer Davidsaver does not have standing to sue under either the Agreement or the applicable statutes as a matter of law, we sustain appellants' issue and hold that the trial court erred by denying their plea to the jurisdiction.  We reverse the trial court's order denying appellants' plea to the jurisdiction and dismiss Officer Davidsaver's claims against appellants.

BOB MCCOY
JUSTICE

PANEL:  WALKER and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  July 29, 2010