NUMBER 13-10-00272-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG

___________________________________________________________

SAN
PATRICIO MUNICIPAL WATER 

DISTRICT
AND SOUTH TEXAS 

WATER
AUTHORITY,                                                                          Appellants,

                             

v.

 

CITY
OF CORPUS CHRISTI,                                                       Appellee.

___________________________________________________________

On appeal from the 319th
District Court

of Nueces County,
Texas.

___________________________________________________________

MEMORANDUM OPINION

 

Before Justices Rodriguez,
Garza, and Benavides

Memorandum Opinion by
Justice Garza

 

Appellants, San
Patricio Municipal Water District (the “District”) and South Texas Water
Authority (the “Authority”), contend that the trial court erred in granting a
plea to the jurisdiction filed by appellee, the City of Corpus Christi (the
“City”).  By six issues, which we construe as three, appellants argue that: 
(1) the Texas Commission on Environmental Quality (“TCEQ”) does not have
exclusive jurisdiction over the underlying dispute; (2) the City’s sovereign
immunity has been waived with respect to all of appellants’ causes of action
against the City; and (3) the trial court erred in denying appellants’ request
for leave to file a third amended petition.  We affirm in part and reverse and
remand in part.

I. 
Background

            Appellants are water conservation
and reclamation districts established under provisions of the Texas
Constitution.  See Tex. Const.
art. XVI, § 59.  Since the early 1980s, appellants have purchased treated water
from the City pursuant to contracts.  The active contract between the City and
the District was executed in 1997 and states that “[t]he price to be charged
for treated water sold by the City to the District is the published rate for
water service established by City ordinance . . . .”  The 1997 contract also
provides as follows:

In
the event of any dispute as to the rates being charged, the City and the
District agree that the dispute will be appealed to the TNRCC[[1]], under
applicable TNRCC rules, to the extent that the TNRCC has jurisdiction over the
issue. . . .  In the event the TNRCC does not have jurisdiction or refuses to
hear the dispute, either party may bring an action in court to settle the
dispute.

 

The active contract between the City and the
Authority, executed in 1980, provides that:

The
price to be charged for treated water sold by the City to the Authority shall
be the regular established and published outside City Limit (OCL) rate at the
time of taking, for outside City limits customers of similar location and
demand requirements, as determined by the City, not in conflict with the terms
of this agreement.

 

In 2008, appellants sued the
City, alleging that the City had been improperly charging them for storm water
and drainage services which appellants did not receive.  In their second
amended petition, dated July 13, 2009, appellants alleged that the City had
committed an unconstitutional taking, had been unjustly enriched, and had
breached the aforementioned contracts.  Appellants contended specifically that
“the City began illegally charging drainage and storm water charges to the
District and the Authority in 2001, and perhaps earlier,” and that “the City
embedded those charges in its water charges such that neither the District nor
the Authority discovered the illegal charges for many years.”  Appellants
further alleged that “[t]he City made representations including service rate
model representations . . . [and t]he District relied on
those representations when it entered into its water purchase contracts with
the City.”  According to appellants, when they discovered that storm water and
drainage charges were being included in the City’s water charges, they “stopped
paying the illegal charges and filed this lawsuit, seeking to recover their
property wrongfully taken by the City.”  In their second amended petition,
appellants requested damages, an equitable accounting, declaratory relief, and
attorney’s fees.

The City subsequently
answered and filed a plea to the jurisdiction arguing that the trial court
lacked subject matter jurisdiction over appellants’ causes of action because: 
(1) jurisdiction over the “appropriateness of water rates” is vested
exclusively with the TCEQ, see Tex.
Water Code Ann. § 13.042(e) (Vernon 2008); and (2) the City is immune
from suit under the doctrine of sovereign immunity.  In response, appellants
produced affidavits by James P. Naismith, the District’s manager since 1989,
and Marvin B. Morgan, an experienced public utility management consultant.  In
his affidavit, Naismith reiterated the allegations made in appellants’ second
amended petition.  Morgan stated in his affidavit that, after reviewing
“voluminous materials” provided to him by the City, he “determined that the
City included storm water charges in the costs charged to the two Plaintiffs
for water delivered by the City during the years 2001 through 2007, inclusive,
and probably since 1988.”  Morgan further stated that “[t]he proceeds from the
unauthorized storm water charges were deposited into the City’s accounts and
were used by the City for storm water and possibly other purposes . . . .”  In
support of these allegations, Morgan pointed to a presentation given at a
Corpus Christi City Council workshop in 2007 entitled “Water Utility Rate
Study,” which stated in part that the City’s storm water services are
“currently funded through treated water rates.”

After a hearing, the trial
court granted the City’s plea on April 16, 2010, and dismissed all of
appellants’ claims with prejudice.  No findings of fact or conclusions of law
were issued.  This appeal followed.[2]

II. 
Standard of Review

            A
plea to the jurisdiction is a dilatory plea used to defeat a cause of action
without regard to whether the claims asserted have merit.  Bland Indep. Sch.
Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).  The plea challenges the
trial court’s subject matter jurisdiction.  Id.; see Tex. Dep’t of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether a trial court has
subject matter jurisdiction is a question of law that we review de novo.  Tex.
Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Tex.
Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex.
2002).

            The plaintiff has the burden to
plead facts affirmatively showing that the trial court has jurisdiction.  Tex.
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); City
of Fort Worth v. Davidsaver, 320 S.W.3d 467, 473 (Tex. App.–Fort Worth
2010, no pet.).  We construe the pleadings liberally in favor of the pleader,
look to the pleader’s intent, and accept as true the factual allegations in the
pleadings.  See Miranda, 133 S.W.3d at 226, 228; City of Fort Worth
v. Crockett, 142 S.W.3d 550, 552 (Tex. App.–Fort Worth 2004, pet. denied).  If
a plea to the jurisdiction challenges the existence of jurisdictional facts, we
consider relevant evidence submitted by the parties when necessary to resolve
the jurisdictional issues raised, as the trial court is required to do, even
those facts which may implicate the merits of the cause of action.  Miranda,
133 S.W.3d at 227; Blue, 34 S.W.3d at 555 (confining evidentiary review
to evidence that is relevant to the jurisdictional issue); see City
of Waco v. Kirwan, 298 S.W.3d 618, 622 (Tex. 2009).

            A trial court’s review of a plea
to the jurisdiction challenging the existence of jurisdictional facts mirrors
that of a traditional motion for summary judgment.  Miranda, 133 S.W.3d
at 228; see Tex. R. Civ. P.
166a(c).  The government defendant is required to meet the summary judgment
standard of proof for its assertion that the trial court lacks jurisdiction; once
the defendant meets its burden, the plaintiff is then required to show that
there is a disputed material fact regarding the jurisdictional issue.  Miranda,
133 S.W.3d at 228.  If the evidence creates a fact question regarding
jurisdiction, the trial court must deny the plea to the jurisdiction and leave
its resolution to the fact finder.  Id. at 227-28.  On the other hand,
if the evidence is undisputed or fails to raise a fact question on the
jurisdictional issue, the trial court rules on the plea to the jurisdiction as
a matter of law.  Id. at 228.  “In considering this evidence, we ‘take
as true all evidence favorable to the nonmovant’ and ‘indulge every reasonable
inference and resolve any doubts in the nonmovant’s favor.’”  Kirwan,
298 S.W.3d at 622 (quoting Miranda, 133 S.W.3d at 228).  Further,
a defendant cannot simply deny the existence of jurisdictional facts and force
the plaintiff to raise a fact issue.  See Johnson v. Brewer & Pritchard,
P.C., 73 S.W.3d 193, 207 (Tex. 2002); see also County of Cameron v.
Brown, 80 S.W.3d 549, 555 (Tex. 2002) (“In deciding a plea to the
jurisdiction, a court may not weigh the claims’ merits but must consider only
the plaintiffs’ pleadings and evidence pertinent to the jurisdictional
inquiry.”).

            Because the trial court did not
specify the basis upon which it granted the City’s plea, we will affirm if any
of the grounds presented by the City are meritorious.  See Longoria v. Exxon
Mobil Corp., 255 S.W.3d 174, 183 (Tex. App.–San Antonio 2008, pet. denied).

III. 
Discussion

A.        Exclusive Jurisdiction

The City asserted in its
plea that exclusive jurisdiction over the underlying dispute resided with the
TCEQ, and that the trial court lacked jurisdiction over each of appellants’
claims for that reason.  By its first issue, appellants contend that the trial
court erred if it granted the City’s plea on this basis.

            Under the exclusive jurisdiction
doctrine, the Legislature grants an administrative agency the sole authority to
make an initial determination in a dispute.  Subaru of Am. v. David McDavid
Nissan, Inc., 84 S.W.3d 212, 221 (Tex. 2002) (citing Cash Am. Int’l Inc. v. Bennett, 35
S.W.3d 12, 15 (Tex. 2000)).  An agency has exclusive jurisdiction “when a
pervasive regulatory scheme indicates that Congress intended for the regulatory
process to be the exclusive means of remedying the problem to which the
regulation is addressed.”  Id.  Typically, if an agency has exclusive
jurisdiction, a party must exhaust all administrative remedies before seeking
judicial review of the agency's action.  Id. (citing Cash Am. Int’l
Inc., 35 S.W.3d at 15).  Until then, the trial court lacks subject matter
jurisdiction and must dismiss the claims within the agency’s exclusive
jurisdiction.  Id.

Determining if an agency has
exclusive jurisdiction requires statutory construction.  Subaru of Am., 84
S.W.3d at 222.  Our objective when construing a statute is to determine and
give effect to the Legislature’s intent.  See Fitzgerald v. Advanced Spine
Fixation Sys., 996 S.W.2d 864, 865 (Tex. 1999).  To ascertain that intent,
we look first to the statute’s plain language and give words their ordinary
meaning.  Id.

Section 13.042 of the Texas
Water Code provides that the TCEQ shall have “exclusive original jurisdiction
over water and sewer utility rates, operations, and services not within the
incorporated limits[[3]]
of a municipality exercising exclusive original jurisdiction over those rates,
operations, and services as provided in [water code chapter 13].”  Tex. Water Code Ann. § 13.042(e)[4]; cf. Tara
Partners, Ltd. v. City of S. Houston, 282 S.W.3d 564, 573 (Tex. App.–Houston
[14th Dist.] 2009, pet. denied) (concluding that water code section 13.042 “does
not confer exclusive appellate jurisdiction over the rates charged by a
municipally owned utility to ratepayers residing within its territorial
boundaries” (emphasis added)).  The City’s argument in its plea and on appeal is
that the core of each appellants’ claims is a challenge to the appropriateness
of the water rates set by the City, and that the TCEQ therefore has exclusive
jurisdiction over each of those claims.

The City notes correctly
that “rate” is defined very broadly in the statute.  We do not believe,
however, that the definition is broad enough to encompass charges that are not
attributable to water or sewage services.  “Rate” is defined in the statute as:

every
compensation, tariff, charge, fare, toll, rental, and classification or any of
those items demanded, observed, charged, or collected whether directly or
indirectly by any retail public utility for any service, product, or commodity
described in Subdivision (23) of this section and any rules, regulations,
practices, or contracts affecting that compensation, tariff, charge, fare,
toll, rental, or classification.

 

Id. § 13.002(17) (Vernon
2008).  The “service[s], product[s], [and] commodit[ies] described in Subdivision
(23)” of section 13.002 of the water code are:

the
transmission, storage, distribution, sale, or provision of potable water to the
public or . . . the resale of potable water to the public
for any use or . . . the collection, transportation,
treatment, or disposal of sewage or other operation of a sewage disposal
service for the public . . . .

 

Id. § 13.002(23).  Appellants
allege that the amounts they were charged for water included amounts directly
attributable to storm water and drainage services.  Specifically, appellants produced
evidence in the form of Morgan’s affidavit stating that the City “included
storm water charges in the costs charged” to appellants and used the proceeds
from those charges “for storm water and possibly other purposes . . . .”  We
must accept these allegations as true in our jurisdictional analysis.  See Miranda,
133 S.W.3d at 226, 228; City of Fort Worth, 142 S.W.3d at 552.  If, in
fact, the rate set by the City included charges for storm water services, then
the portion of the rate representing those charges would not constitute a
“rate” under the plain language of the statute, because the statutory
definition of “rate” only includes charges attributable to potable water and
sewage services.  See Tex. Water
Code Ann. § 13.002(17), (23).  Accordingly, any dispute as to that
portion of the charge attributable to storm water and drainage services would
not be subject to the exclusive jurisdiction of the TCEQ.  See id. §
13.042(e).  Appellants’ claims fall in this category.

We therefore conclude that
the trial court erred if it granted the City’s plea to the jurisdiction on this
ground.  We sustain appellants’ first issue.

B.        Sovereign Immunity

            We next address whether the trial
court’s judgment granting the City’s plea to the jurisdiction was justified by
application of the doctrine of sovereign immunity,[5] the other
distinct ground presented by the City in its plea.  By its second issue,
appellants argue that the City’s sovereign immunity has been explicitly waived
with respect to each of appellants’ causes of action against the City.

In Texas, sovereign immunity has
two components:  (1) immunity from liability, which bars enforcement of a
judgment against a governmental entity, and (2) immunity from suit, which bars
suit against the entity altogether.  Tooke v. City of Mexia, 197 S.W.3d
325, 332 (Tex. 2006); Kan. City So. v. Port of Corpus Christi Auth., 305
S.W.3d 296, 304 (Tex. App.–Corpus Christi 2009, pet. denied).  Immunity from
liability is an affirmative defense that must be pleaded or else is waived.  Kinnear
v. Tex. Comm’n on Human Rights, 14 S.W.3d 299, 300 (Tex. 2000).  Immunity
from suit, on the other hand, deprives a court of subject matter jurisdiction. 
Miranda, 133 S.W.3d at 224.  By entering into a contract, as the City
undisputedly did here, a governmental entity necessarily waives immunity from liability,
voluntarily binding itself like any other party to the terms of the agreement. 
Tooke, 197 S.W.3d at 332.  However, the act of entering into a contract
does not waive immunity from suit; instead, we must defer to the legislature to
waive immunity from suit, because this allows the legislature to protect its
policymaking function.  Id.  This is particularly true in the context of
contract claims, where “legislative control over sovereign immunity allows the
legislature to respond to changing conditions and revise existing agreements if
doing so would benefit the public.”  Id. (quoting IT-Davy, 74
S.W.3d at 854); see Catalina Dev. Inc. v. County of El Paso, 121 S.W.3d
704, 705-06 (Tex. 2003).  Accordingly, sovereign immunity from suit may be
waived only by “clear and unambiguous” statutory language.  Tooke, 197
S.W.3d at 329, 332-33; see Tex.
Gov’t Code Ann. § 311.034 (Vernon Supp. 2009) (“In order to preserve the
legislature’s interest in managing state fiscal matters through the
appropriations process, a statute shall not be construed as a waiver of
sovereign immunity unless the waiver is effected by clear and unambiguous
language.”).

            1.         Claim for
Declaratory Relief

            The doctrine of sovereign immunity
is not applicable to certain requests for declaratory relief filed pursuant to
the Uniform Declaratory Judgments Act (“UDJA”).  See Tex. Civ. Prac. & Rem. Code Ann. §§
37.001-.011 (Vernon 2008); see also Tex. Highway Comm’n v. Tex. Ass’n of
Steel Importers, Inc., 372 S.W.2d 525, 530 (Tex. 1963) (holding that
legislative consent was not required for a declaratory judgment suit against
the Highway Commission to determine the parties’ rights); Cobb v. Harrington,
144 Tex. 360, 190 S.W.2d 709, 712 (Tex. 1945) (holding that legislative consent
was not required for declaratory judgment suit against the State Comptroller to
determine the parties’ rights under a taxation statute).  Specifically, plaintiffs
may seek declaratory relief against governmental entities that allegedly act
without legal or statutory authority.  IT-Davy, 74 S.W.3d at 855.  This
type of declaratory judgment action simply seeks to compel state officers to
act within their official capacity and does not attempt to subject the State to
liability, so immunity is not applicable.  Id.  On the other
hand, declaratory judgment actions against state officials seeking to establish
a contract’s validity, to enforce performance under a contract, or to impose
contractual liabilities are considered suits against the State and may not be
imposed without explicit legislative permission.  Id.; W.D.
Haden Co. v. Dodgen, 158 Tex. 74, 308 S.W.2d 838, 840 (Tex. 1958).

            In their second amended petition,
appellants requested that the trial court declare the following:

a. 
The City is without authority to charge the District and the Authority for
storm water and drainage services;

 

b. 
The District and the Authority are exempt from future storm water and drainage
charges charged by the City;

 

c. 
The District and the Authority are entitled to be free from imbedded charges
for services that are not provided to them;

 

d. 
The District and the Authority are entitled to recover their attorneys fees and
reasonable costs incurred in connection with the bringing of this suit.

 

In their brief on appeal, appellants describe
their claim for declaratory relief more concisely:  “The District and the
Authority seek declaratory relief in the form of a refund of the illegally
collected storm water and drainage service charges they paid as a result of
fraud or mutual mistake, and seek attorneys fees and costs.”  Appellants note
that sovereign immunity “will not defeat a claim for
declaratory . . . relief seeking the refund of illegally
collected taxes or fees if the plaintiff alleges ‘that the payments were made
as a result of fraud, mutual mistake of fact, or duress, whether express or
implied.’”  Gatesco, Inc. v. City of Rosenberg, 312 S.W.3d 140, 144
(Tex. App.–Houston [14th Dist.] 2010, no pet.) (quoting Tara Partners, Ltd.,
282 S.W.3d at 571-75; Dallas County Cmty. Coll. Dist. v. Bolton, 185
S.W.3d 868, 876-79 (Tex. 2005)); see Austin Nat’l Bank of Austin, Tex. v. Sheppard,
123 Tex. 272, 279, 71 S.W.2d 242, 245-46 (1934) (“A person who voluntarily pays
an illegal tax has no claim for its repayment. . . .  A
person who pays an illegal tax under duress has a legal claim for its
repayment. . . .  Duress in the payment of an illegal
tax may be either express or implied, and the legal duty to refund is the same
in both instances.”).

On the other hand, the
City contends that, regardless of what was specifically alleged, the underlying
nature of appellants’ request for declaratory relief is a demand for money
damages.  See City of El Paso v. Heinrich, 284 S.W.3d 366, 370-71 (Tex.
2009) (noting that the UDJA does not authorize circumvention of sovereign
immunity by characterizing a suit for money damages as a declaratory judgment
claim).  We agree that appellants’ requests for declaratory relief are merely
disguised attempts to collect money damages from the City.  The UDJA does not
enlarge a trial court’s jurisdiction, and a litigant’s request for declaratory
relief does not alter a suit’s underlying nature.  Id. at 371 (citing IT-Davy,
74 S.W.3d at 855; State v. Morales, 869 S.W.2d 941, 947 (Tex. 1994)). 
Here, appellants’ declaratory judgment action seeks clarification of the
parties’ rights under the contracts at issue; accordingly, they constitute
attempts to “enforce performance of a contract” and are barred by sovereign
immunity.  See IT-Davy, 74 S.W.3d at 855; W.D. Haden Co., 308
S.W. 2d at 840.

Appellants appear to argue
that these requests instead seek clarification of the parties’ rights under the
Municipal Drainage Utility Services Act (the “MDUSA”).  See Tex. Loc. Gov’t Code Ann. §§ 552.041-.054
(Vernon Supp. 2010).  Specifically, appellants argue that the City lacked the
authority under the MDUSA to impose charges for storm water or drainage
services on customers outside the City’s corporate limits.  Such a request
would not be barred by immunity because it would merely “seek[] to compel [the
City] to act within [its] official capacity” and would not attempt to impose
liability on the City.  See IT-Davy, 74 S.W.3d at 855; see also Heinrich,
284 S.W.3d at 371 (construing State v. Epperson, 121 Tex. 80, 42 S.W.2d
228, 231 (Tex. 1931)) (“[W]here a statute or the constitution requires that
government contracts be made or performed in a certain way, leaving no room for
discretion, a suit alleging a government official’s violation of that law is
not barred, even though it necessarily involves a contract.”).  However, in
their live pleading before the trial court, appellants did not allege that the
City violated the MDUSA or any other statute.[6] 
Therefore, the trial court had no choice but to consider appellants’ claims for
declaratory relief as attempts to “impose contractual liabilities” on the City;
accordingly, those claims are barred by sovereign immunity.  See IT-Davy,
74 S.W.3d at 855; W.D. Haden Co., 308 S.W. 2d at 840.

2.         Constructive
Trust Claim

In their second amended
petition, appellants alleged a cause of action for “unjust enrichment and
constructive trust,” claiming that their “property (monetary resources) has
been obtained by the City through misrepresentations and concealments,” that
“the City has been unjustly enriched by its deleterious actions,” and that
appellants’ money “has been held in constructive trust for their benefit and
must be returned to them.”  Appellants argue that this claim is authorized
under the Texas Tort Claims Act (“TTCA”).  See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-.109 (Vernon 2005). 
However, appellants neither alleged in their pleadings nor established by
evidence that they satisfied the mandatory prerequisites for suit as provided
in the TTCA.  See id. § 101.101 (“A governmental unit is entitled to
receive notice of a claim against it under this chapter not later than six
months after the day that the incident giving rise to the claim occurred. . .
.”).  Because appellants have not pleaded facts affirmatively showing that the
trial court has jurisdiction, the trial court did not err in granting the
City’s plea to the jurisdiction with respect to this claim.  See Tex. Ass’n
of Bus., 852 S.W.2d at 446; Davidsaver, 320 S.W.3d at 473.

3.         Constitutional
Takings Claim

            Appellants also argue the trial
court erred if it found that the City retained sovereign immunity as to its
constitutional takings, or inverse condemnation, claim.  Article I, section 17 of
the Texas Constitution provides that “[n]o person’s property shall be taken,
damaged, or destroyed for or applied to public use without adequate
compensation being made, unless by the consent of such person . . . .”  Tex. Const. art. I, § 17; see Gen.
Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001). 
To establish a claim under this provision, appellants must show that (1) the State
intentionally performed certain acts (2) that resulted in a “taking” of property
(3) for public use.  Steele v. City of Houston, 603 S.W.2d 786, 788-92 (Tex.
1980).  The doctrine of sovereign immunity does not shield the State from an
action for compensation under the takings clause.  See Little-Tex, 39 S.W.3d
at 598; Steele, 603 S.W.2d at 791.  Whether particular facts are enough to
constitute a taking is a question of law.  See Little-Tex, 39 S.W.3d at 598;
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 936 (Tex. 1998).

Appellants allege the
following in their second amended petition:

[T]he
City intentionally performed an act or acts, that is, charging Plaintiffs for
storm water and drainage services not provided to either Plaintiff.  Those
charges resulted in the taking of the District’s and the Authority’s
property—their monetary resources—without their consent.  The property was
taken from the District and the Authority for use by the City, and thus the
public.

 

Accepting appellants’
allegations as true, see Miranda, 133 S.W.3d at 228, we nevertheless
find that the City did not have the requisite intent for appellants to
establish a takings claim.  A government entity lacks the requisite intent to
support a claim under constitutional takings jurisprudence when it merely takes
or withholds property from an entity in a contract dispute.  See Little-Tex,
39 S.W.3d at 598-99.  In such a situation, the government entity does not have the
intent to take under its eminent domain powers; rather, it only has an intent to
act within the scope of the contract.  Green Int’l Co. v. State, 877 S.W.2d
428, 434 (Tex. App.–Austin 1994, writ dism’d).  In other words, when the State acts
“within a color of right to take or withhold property in a contractual
situation, [it] is acting akin to a private citizen and not under any sovereign
powers,” and so a takings claim will not lie.  State v. Holland, 221
S.W.3d 639, 643 (Tex. 2007) (quoting Little-Tex, 39 S.W.3d at 599); see
also Brownsville Pub. Utils. Bd. v. Coatings, Inc., No. 13-07-00530-CV, 2009
Tex. App. LEXIS 1883, at *13 (Tex. App.–Corpus Christi Mar. 19, 2009, no pet.)
(mem. op.) (“[E]ven if the governmental entity’s interpretation of the contract
under which it acts is wrong, if its claim is made under a color of a
contractual right, the requisite intent is lacking.”).  Because the elements of
a constitutional takings claim have not been alleged by appellants, the City’s
sovereign immunity has not been waived with respect to this claim.

            4.         Breach of Contract
Claim

            Finally, the City contended in
its plea to the jurisdiction that it is immune to appellants’ breach of
contract claims.  In their second amended petition, appellants argue that the
City’s immunity with respect to those claims has been waived:  (1) under
subchapter I of chapter 271 of the Texas Local Government Code, see Tex. Loc. Gov’t Code Ann. §§
271.151-.160 (Vernon Supp. 2010); (2) by entering into a contract to perform a
proprietary function, see Gates v. City of Dallas, 704 S.W.2d 737, 738-39
(Tex. 1986) (“Contracts made by municipal corporations in their proprietary
capacity have been held to be governed by the same rules as contracts between
individuals.”); and (3) by its conduct, see Fed. Sign v. Tex. S. Univ.,
951 S.W.2d 401, 408 n.1 (Tex. 1997) (“There may be other circumstances where
the State may waive its immunity by conduct other than simply executing a
contract so that it is not always immune from suit when it contracts.”).

We first address waiver of
immunity under the local government code.  The Legislature enacted section
271.152 of the local government code “to loosen the immunity bar so that all
local governmental entities that have been given or are given the statutory
authority to enter into contracts shall not be immune from suits arising from those
contracts.”  Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth., 320
S.W.3d 829, 838 (Tex. 2010) (citing Ben Bolt-Palito Blanco Consol. Indep.
Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund,
212 S.W.3d 320, 327 (Tex. 2006)).  “As supporters of the Bill explained,
blanket immunity from breach of contract claims ‘create[d] a fundamentally
unfair situation that denie[d] redress, for example, to a contractor who
completed a project for a city that refused to pay.’”  Id. at 838 n.7
(quoting House Research Organization, Bill Analysis, Tex. H.B. 2039, 79th Leg.,
R.S. (2005)).

Section 271.152 provides as
follows:

A
local governmental entity that is authorized by statute or the constitution to
enter into a contract and that enters into a contract subject to this
subchapter waives sovereign immunity to suit for the purpose of adjudicating a
claim for breach of the contract, subject to the terms and conditions of this
subchapter.

 

Tex. Loc. Gov’t Code
Ann.
§ 271.152.  A “contract subject to this subchapter” is defined as “a written
contract stating the essential terms of the agreement for providing goods or
services to the local governmental entity.”  Id. § 271.151(2).[7]

The City argued in its plea
that the contracts at issue here are not subject to the section 271.152 waiver
because they “do[] not provide for any goods or services to be provided to the
City.  In fact, the only goods being delivered under the contracts are water
flowing from the City to the [appellants] for which the [appellants] must pay
the City.”  In response, appellants contend that the Texas Supreme Court has
taken an “expansive view” of the section 271.152 waiver under which “all local
governmental entities waive immunity from suits arising from the contracts they
enter [into] regardless of whether goods and services were provided to or
from the local governmental entity.”  See Ben Bolt-Palito Blanco Consol.
Indep. Sch. Dist., 212 S.W.3d at 327.[8]

We need not determine
whether the waiver of immunity in section 271.152 is applicable to contracts
calling for the provision of goods and services from a local government
entity, because the contracts at issue here clearly call for the provision of
goods and services to a local government entity, as explicitly
contemplated in the statute.  The statute defines “local governmental entity” as
including any “special-purpose district or authority, including any . . . water
improvement district, water control and improvement district, water control and
preservation district, . . . [or] conservation and reclamation district. . .
.”  Tex. Loc. Gov’t Code Ann. §
271.151(3)(C).  Both appellants are “local governmental entities” under this
definition, and, as the City acknowledges, the contracts at issue call for
goods and services to be provided to appellants.  The contracts at issue are
therefore “contracts subject to this subchapter,” and consequently, any party
to the contract that is a “local government entity”—such as the City, see
id. § 271.151(3)(A)—“waives sovereign immunity to suit for the purpose of
adjudicating a claim for breach of the contract.”  Id. § 271.152.

The City additionally argued
in its plea and on appeal that section 271.152 does not effectively waive its
immunity to appellants’ breach of contract claims because appellants have not
requested damages recoverable under that statute.  See id. § 271.153 (limiting
recoverable damages to “(1) the balance due and owed by the local governmental
entity under the contract . . . (2) the amount owed for change orders or
additional work . . . (3) reasonable and necessary attorney’s fees . . . and
(4) interest as allowed by law” and stating that consequential and exemplary
damages are not recoverable).  However, in Kirby Lake, the Texas Supreme
Court rejected a similar argument, noting that “the purpose of section 271.153 is
to limit the amount due by a governmental agency on a contract once liability
has been established, not to foreclose the determination of whether liability
exists.”  Kirby Lake Dev., Ltd., 320 S.W.3d at 839-40; but see Tooke,
197 S.W.3d at 346 (holding that defendant city’s immunity was not waived because
plaintiffs sought only lost profits, which are consequential damages that are
not recoverable under section 271.153).  In any event, we disagree with the
City’s characterization of the damages sought by appellants.  In their second
amended petition, appellants alleged that the City wrongfully charged them for
services that were never rendered, and they requested “[d]amages for the City’s
conduct relative to its contracts with the District and the Authority in the
amount of the illegal charges improperly assessed against them, in
contravention of the parties’ rights and obligations under th[e] agreements.” 
Taking appellants’ factual allegations as true, see Miranda, 133 S.W.3d
at 228, we conclude that the damages sought constitute an alleged “balance due
and owed” by the City.  See Tex.
Loc. Gov’t Code Ann. § 271.153.  Therefore, assuming but not deciding
that appellants were required to plead damages recoverable under section
271.153 in order for immunity to be waived under section 271.152, we find that
appellants have pleaded such damages.  Accordingly, the City’s immunity has
been waived with respect to appellants’ breach of contract claims.[9]  

Appellants’ second issue is
sustained in part.

C.        Denial of Motion for Leave To File
Third Amended Petition

            After the trial court rendered
the judgment on appeal, appellants filed a “Motion to Reconsider Granting of
Plea to the Jurisdiction and Motion for Leave to File Amended Petition.” 
Attached to the motion was a copy of appellants’ proposed third amended
petition.  Appellants assert on appeal that, while their second amended
petition “fully articulated their claims and jurisdictional grounds against the
City,” they sought leave to file a third amended petition “[i]n an abundance of
precaution . . . to assert with greater particularity their allegations of
fraud and mutual mistake to support their declaratory judgment/constructive
trust/unjust enrichment action.”

If a plaintiff’s pleadings
are insufficient to establish jurisdiction but do not affirmatively demonstrate
an incurable defect, the plaintiff should be afforded the opportunity to
replead.  Westbrook v. Penley, 231 S.W.3d 389, 395 (Tex. 2007). 
However, a pleader must be given an opportunity to amend in response to a plea
to the jurisdiction only if it is possible to cure the pleading defect.  Tex.
A&M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 840 (Tex. 2007).  Upon
reviewing appellants’ proposed third amended petition, we conclude that the
allegations contained therein would not have cured the jurisdictional defects
in appellants’ declaratory relief, constructive trust, and constitutional
takings claims.  Therefore, appellants have not shown that they were harmed by
the trial court’s denial of their motion for leave to file a third amended
petition.  See Tex. R. App. P. 44.1(a). 
We overrule appellants’ third issue.

IV. 
Conclusion

            We reverse the judgment of the
trial court dismissing appellants’ breach of contract claims for lack of
jurisdiction under section 271.152 of the Texas Local Government Code.  We
remand those claims to the trial court for further proceedings consistent with
this opinion.  The remainder of the trial court’s judgment is affirmed.

 

                                                                                    _______________________

                                                                                    DORI
CONTRERAS GARZA

                                                                                    Justice


 

Delivered
and filed the 

13th
day of January, 2011.









[1] “TNRCC” refers to the Texas Natural
Resource Conservation Commission, which is the former name of the TCEQ.  See
30 Tex. Admin. Code § 3.2(8)
(2002).





[2] Appellants, in their notice of
appeal, characterized the appeal as accelerated, citing rule 28 of the Texas
Rules of Appellate Procedure.  See Tex.
R. App. P. 28(a) (stating that appeals from interlocutory orders, among
others, are accelerated).  However, we note that the judgment on appeal is not
interlocutory, and the appeal does not satisfy any of the other criteria for
acceleration listed in rule 28.  See id.  Accordingly, the appeal is not
accelerated.





[3] It is undisputed that both appellants
are “not within the incorporated limits” of the City.  See Tex. Water Code Ann. § 13.042(e)
(Vernon 2008).

 





[4] Any appeal of water rates must be
filed with the TCEQ within ninety days after the date the notice of the setting
of the water rates is received from the water provider.  Id. § 13.043(f)
(Vernon 2008).





[5] The terms sovereign immunity and
governmental immunity, although often used interchangeably, involve two
distinct concepts:

 

Sovereign immunity refers to the
State’s immunity from suit and liability.  In addition to protecting the State
from liability, it also protects the various divisions of state government,
including agencies, boards, hospitals, and universities.  Governmental
immunity, on the other hand, protects political subdivisions of the State,
including counties, cities, and school districts.

 

Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 (Tex. 2003)
(internal citations omitted).  For ease of reference, we will use the term
“sovereign immunity” to refer to both sovereign immunity and governmental
immunity.  See Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371,
374 n.1 (Tex. 2006) (op. on reh’g); Kan. City So. v. Port of Corpus Christi
Auth., 305 S.W.3d 296, 303 n.5 (Tex. App.–Corpus Christi 2009, pet.
denied).





[6] We note that, in any case, the MDUSA
appears to be inapplicable because, as appellants concede, the governing body
of the City never adopted the provisions of the statute as provided by law.  See
Tex. Loc. Gov’t Code Ann. §
552.045 (Vernon Supp. 2010) (providing that “the governing body of the
municipality, by a majority vote of its entire membership, may adopt [the
MDUSA] by an ordinance that declares the adoption and that declares the
drainage of the municipality to be a public utility”); see also id. § 552.054
(Vernon Supp. 2010) (stating that “[t]his subchapter does not: . . . preclude
a municipality from utilizing revenues, other than drainage utility revenues,
for drainage purposes; or . . . preclude a municipality
from imposing impact fees or other charges for drainage authorized by law”).

 





[7] It is undisputed that the contracts
at issue are written and “stat[e] the essential terms of the agreement.”  See
Tex. Loc. Gov’t Code Ann. § 271.151(2)
(Vernon Supp. 2010).

 





[8] In Ben Bolt, the supreme court
considered whether section 271.152 effectively waived the immunity of a state-sponsored
self-insurance fund (the “Fund”) when one of the Fund’s members, a school
district (the “District”), sued the Fund after the Fund denied a claim for
benefits under the District’s insurance policy.  See Ben Bolt-Palito Blanco
Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint
Self-Ins. Fund, 212 S.W.3d 320, 322 (Tex. 2006).  The Fund argued, as the
City does here, that the contract at issue is not a “contract subject to this
subchapter” because it did not call for goods or services to be provided to
it.  Id. at 327.  The supreme court disagreed, noting that the Fund’s
members, including the District, “elect [the Fund’s] governing board, and a
board subcommittee resolves claims disputes.  To that extent, at least, the
Fund’s members provide services to the Fund.”  Id.  The Court then
concluded:

 

Because the Fund is a “local
government entity” as defined by Section 271.151(3) and “was authorized . . .
to enter” and did in fact enter into “a written contract stating the essential terms
of the agreement for providing [insurance] services to [a] local governmental
entity,” which agreement was properly executed, . . . we conclude that the
statutory waiver applies to this insurance-coverage dispute.

 

Id.
at 328 (brackets and first ellipsis in original).

 

According to appellants, the Ben
Bolt decision represents a “expansive view” of section 271.151(2) under
which the provision of goods or services to or from the local government
entity being sued would make the contract “subject to this subchapter.”  Therefore,
according to appellants, the services provided by the City cause the
contracts at issue to come under the purview of the section 271.152 waiver.  In
the alternative, appellants argue that the contracts at issue did in fact call
for appellants to provide certain “services” to the City.  We need not address
these arguments because of our conclusion that the contracts at issue are
subject to chapter 271 because they call for services to be provided to
appellants, which are also local government entities.  See Tex. Loc. Gov’t Code Ann. § 271.151(2).





[9] Having determined that the City’s
sovereign immunity has been waived under section 271.152 of the local
government code, we need not address appellants’ additional jurisdictional
arguments regarding waiver by proprietary contract and waiver by conduct.  See
Tex. R. App. P. 47.1.