

NUMBER 13-10-00272-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SAN PATRICIO MUNICIPAL WATER
DISTRICT AND SOUTH TEXAS
WATER AUTHORITY,                                          Appellants,

v.

CITY OF CORPUS CHRISTI,                                   Appellee.

On appeal from the 319th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Garza

Appellants, San Patricio Municipal Water District (the "District") and South Texas
Water Authority (the "Authority"), contend that the trial court erred in granting a plea to
the jurisdiction filed by appellee, the City of Corpus Christi (the "City"). By six issues,
which we construe as three, appellants argue that: (1) the Texas Commission on

Environmental Quality ("TCEQ") does not have exclusive jurisdiction over the underlying dispute; (2) the City's sovereign immunity has been waived with respect to all of appellants' causes of action against the City; and (3) the trial court erred in denying appellants' request for leave to file a third amended petition. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Appellants are water conservation and reclamation districts established under provisions of the Texas Constitution. *See* TEX. CONST. art. XVI, § 59. Since the early 1980s, appellants have purchased treated water from the City pursuant to contracts. The active contract between the City and the District was executed in 1997 and states that "[t]he price to be charged for treated water sold by the City to the District is the published rate for water service established by City ordinance . . . ." The 1997 contract also provides as follows:

> In the event of any dispute as to the rates being charged, the City and the District agree that the dispute will be appealed to the TNRCC[1], under applicable TNRCC rules, to the extent that the TNRCC has jurisdiction over the issue. . . . In the event the TNRCC does not have jurisdiction or refuses to hear the dispute, either party may bring an action in court to settle the dispute.

The active contract between the City and the Authority, executed in 1980, provides that:

> The price to be charged for treated water sold by the City to the Authority shall be the regular established and published outside City Limit (OCL) rate at the time of taking, for outside City limits customers of similar location and demand requirements, as determined by the City, not in conflict with the terms of this agreement.

---

[1] "TNRCC" refers to the Texas Natural Resource Conservation Commission, which is the former name of the TCEQ. *See* 30 TEX. ADMIN. CODE § 3.2(8) (2002).

In 2008, appellants sued the City, alleging that the City had been improperly charging them for storm water and drainage services which appellants did not receive. In their second amended petition, dated July 13, 2009, appellants alleged that the City had committed an unconstitutional taking, had been unjustly enriched, and had breached the aforementioned contracts. Appellants contended specifically that "the City began illegally charging drainage and storm water charges to the District and the Authority in 2001, and perhaps earlier," and that "the City embedded those charges in its water charges such that neither the District nor the Authority discovered the illegal charges for many years." Appellants further alleged that "[t]he City made representations including service rate model representations . . . [and t]he District relied on those representations when it entered into its water purchase contracts with the City." According to appellants, when they discovered that storm water and drainage charges were being included in the City's water charges, they "stopped paying the illegal charges and filed this lawsuit, seeking to recover their property wrongfully taken by the City." In their second amended petition, appellants requested damages, an equitable accounting, declaratory relief, and attorney's fees.

The City subsequently answered and filed a plea to the jurisdiction arguing that the trial court lacked subject matter jurisdiction over appellants' causes of action because: (1) jurisdiction over the "appropriateness of water rates" is vested exclusively with the TCEQ, *see* TEX. WATER CODE ANN. § 13.042(e) (Vernon 2008); and (2) the City is immune from suit under the doctrine of sovereign immunity. In response, appellants produced affidavits by James P. Naismith, the District's manager since 1989, and Marvin B. Morgan, an experienced public utility management consultant. In his affidavit,

3

Naismith reiterated the allegations made in appellants' second amended petition. Morgan stated in his affidavit that, after reviewing "voluminous materials" provided to him by the City, he "determined that the City included storm water charges in the costs charged to the two Plaintiffs for water delivered by the City during the years 2001 through 2007, inclusive, and probably since 1988." Morgan further stated that "[t]he proceeds from the unauthorized storm water charges were deposited into the City's accounts and were used by the City for storm water and possibly other purposes . . . ." In support of these allegations, Morgan pointed to a presentation given at a Corpus Christi City Council workshop in 2007 entitled "Water Utility Rate Study," which stated in part that the City's storm water services are "currently funded through treated water rates."

After a hearing, the trial court granted the City's plea on April 16, 2010, and dismissed all of appellants' claims with prejudice. No findings of fact or conclusions of law were issued. This appeal followed.[2]

## II. STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction. *Id.*; *see Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.

---

[2] Appellants, in their notice of appeal, characterized the appeal as accelerated, citing rule 28 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 28(a) (stating that appeals from interlocutory orders, among others, are accelerated). However, we note that the judgment on appeal is not interlocutory, and the appeal does not satisfy any of the other criteria for acceleration listed in rule 28. *See id.* Accordingly, the appeal is not accelerated.

4

2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *City of Fort Worth v. Davidsaver*, 320 S.W.3d 467, 473 (Tex. App.–Fort Worth 2010, no pet.). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228; *City of Fort Worth v. Crockett*, 142 S.W.3d 550, 552 (Tex. App.–Fort Worth 2004, pet. denied). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do, even those facts which may implicate the merits of the cause of action. *Miranda*, 133 S.W.3d at 227; *Blue*, 34 S.W.3d at 555 (confining evidentiary review to evidence that is relevant to the jurisdictional issue); *see City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009).

A trial court's review of a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *see* TEX. R. CIV. P. 166a(c). The government defendant is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction; once the defendant meets its burden, the plaintiff is then required to show that there is a disputed material fact regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the fact finder.

5

*Id.* at 227-28. On the other hand, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. "In considering this evidence, we 'take as true all evidence favorable to the nonmovant' and 'indulge every reasonable inference and resolve any doubts in the nonmovant's favor.'" *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d at 228). Further, a defendant cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise a fact issue. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002); *see also County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) ("In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and evidence pertinent to the jurisdictional inquiry.").

Because the trial court did not specify the basis upon which it granted the City's plea, we will affirm if any of the grounds presented by the City are meritorious. *See Longoria v. Exxon Mobil Corp.*, 255 S.W.3d 174, 183 (Tex. App.–San Antonio 2008, pet. denied).

### III. DISCUSSION

#### A. Exclusive Jurisdiction

The City asserted in its plea that exclusive jurisdiction over the underlying dispute resided with the TCEQ, and that the trial court lacked jurisdiction over each of appellants' claims for that reason. By its first issue, appellants contend that the trial court erred if it granted the City's plea on this basis.

Under the exclusive jurisdiction doctrine, the Legislature grants an administrative agency the sole authority to make an initial determination in a dispute. *Subaru of Am. v.*

6

*David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (citing *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000)). An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *Id.* Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Id.* (citing *Cash Am. Int'l Inc.*, 35 S.W.3d at 15). Until then, the trial court lacks subject matter jurisdiction and must dismiss the claims within the agency's exclusive jurisdiction. *Id.*

Determining if an agency has exclusive jurisdiction requires statutory construction. *Subaru of Am.*, 84 S.W.3d at 222. Our objective when construing a statute is to determine and give effect to the Legislature's intent. *See Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 865 (Tex. 1999). To ascertain that intent, we look first to the statute's plain language and give words their ordinary meaning. *Id.*

Section 13.042 of the Texas Water Code provides that the TCEQ shall have "exclusive original jurisdiction over water and sewer utility rates, operations, and services not within the incorporated limits[3] of a municipality exercising exclusive original jurisdiction over those rates, operations, and services as provided in [water code chapter 13]." TEX. WATER CODE ANN. § 13.042(e)[4]; *cf. Tara Partners, Ltd. v. City of S. Houston*, 282 S.W.3d 564, 573 (Tex. App.–Houston [14th Dist.] 2009, pet. denied)

---

[3] It is undisputed that both appellants are "not within the incorporated limits" of the City. *See* TEX. WATER CODE ANN. § 13.042(e) (Vernon 2008).

[4] Any appeal of water rates must be filed with the TCEQ within ninety days after the date the notice of the setting of the water rates is received from the water provider. *Id.* § 13.043(f) (Vernon 2008).

(concluding that water code section 13.042 "does not confer exclusive appellate jurisdiction over the rates charged by a municipally owned utility to ratepayers residing *within* its territorial boundaries" (emphasis added)).  The City's argument in its plea and on appeal is that the core of each appellants' claims is a challenge to the appropriateness of the water rates set by the City, and that the TCEQ therefore has exclusive jurisdiction over each of those claims.

The City notes correctly that "rate" is defined very broadly in the statute.  We do not believe, however, that the definition is broad enough to encompass charges that are not attributable to water or sewage services.  "Rate" is defined in the statute as:

> every compensation, tariff, charge, fare, toll, rental, and classification or any of those items demanded, observed, charged, or collected whether directly or indirectly by any retail public utility for any service, product, or commodity described in Subdivision (23) of this section and any rules, regulations, practices, or contracts affecting that compensation, tariff, charge, fare, toll, rental, or classification.

*Id.* § 13.002(17) (Vernon 2008).  The "service[s], product[s], [and] commodit[ies] described in Subdivision (23)" of section 13.002 of the water code are:

> the transmission, storage, distribution, sale, or provision of potable water to the public or . . . the resale of potable water to the public for any use or . . . the collection, transportation, treatment, or disposal of sewage or other operation of a sewage disposal service for the public . . . .

*Id.* § 13.002(23).  Appellants allege that the amounts they were charged for water included amounts directly attributable to storm water and drainage services.  Specifically, appellants produced evidence in the form of Morgan's affidavit stating that the City "included storm water charges in the costs charged" to appellants and used the proceeds from those charges "for storm water and possibly other purposes . . . ."  We must accept these allegations as true in our jurisdictional analysis.  *See Miranda*, 133

8

S.W.3d at 226, 228; *City of Fort Worth*, 142 S.W.3d at 552. If, in fact, the rate set by the City included charges for storm water services, then the portion of the rate representing those charges would not constitute a "rate" under the plain language of the statute, because the statutory definition of "rate" only includes charges attributable to potable water and sewage services. *See* TEX. WATER CODE ANN. § 13.002(17), (23). Accordingly, any dispute as to that portion of the charge attributable to storm water and drainage services would not be subject to the exclusive jurisdiction of the TCEQ. *See id.* § 13.042(e). Appellants' claims fall in this category.

We therefore conclude that the trial court erred if it granted the City's plea to the jurisdiction on this ground. We sustain appellants' first issue.

## B. Sovereign Immunity

We next address whether the trial court's judgment granting the City's plea to the jurisdiction was justified by application of the doctrine of sovereign immunity,[5] the other distinct ground presented by the City in its plea. By its second issue, appellants argue that the City's sovereign immunity has been explicitly waived with respect to each of appellants' causes of action against the City.

---

[5] The terms sovereign immunity and governmental immunity, although often used interchangeably, involve two distinct concepts:

> Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts.

*Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 (Tex. 2003) (internal citations omitted). For ease of reference, we will use the term "sovereign immunity" to refer to both sovereign immunity and governmental immunity. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 n.1 (Tex. 2006) (op. on reh'g); *Kan. City So. v. Port of Corpus Christi Auth.*, 305 S.W.3d 296, 303 n.5 (Tex. App.–Corpus Christi 2009, pet. denied).

In Texas, sovereign immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity, and (2) immunity from suit, which bars suit against the entity altogether. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006); *Kan. City So. v. Port of Corpus Christi Auth.*, 305 S.W.3d 296, 304 (Tex. App.–Corpus Christi 2009, pet. denied). Immunity from liability is an affirmative defense that must be pleaded or else is waived. *Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex. 2000). Immunity from suit, on the other hand, deprives a court of subject matter jurisdiction. *Miranda*, 133 S.W.3d at 224. By entering into a contract, as the City undisputedly did here, a governmental entity necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of the agreement. *Tooke*, 197 S.W.3d at 332. However, the act of entering into a contract does not waive immunity from suit; instead, we must defer to the legislature to waive immunity from suit, because this allows the legislature to protect its policymaking function. *Id.* This is particularly true in the context of contract claims, where "legislative control over sovereign immunity allows the legislature to respond to changing conditions and revise existing agreements if doing so would benefit the public." *Id.* (quoting *IT-Davy*, 74 S.W.3d at 854); *see Catalina Dev. Inc. v. County of El Paso*, 121 S.W.3d 704, 705-06 (Tex. 2003). Accordingly, sovereign immunity from suit may be waived only by "clear and unambiguous" statutory language. *Tooke*, 197 S.W.3d at 329, 332-33; *see* TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2009) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

## 1.    Claim for Declaratory Relief

The doctrine of sovereign immunity is not applicable to certain requests for declaratory relief filed pursuant to the Uniform Declaratory Judgments Act ("UDJA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001-.011 (Vernon 2008); *see also Tex. Highway Comm'n v. Tex. Ass'n of Steel Importers, Inc*., 372 S.W.2d 525, 530 (Tex. 1963) (holding that legislative consent was not required for a declaratory judgment suit against the Highway Commission to determine the parties' rights); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (Tex. 1945) (holding that legislative consent was not required for declaratory judgment suit against the State Comptroller to determine the parties' rights under a taxation statute).   Specifically, plaintiffs may seek declaratory relief against governmental entities that allegedly act without legal or statutory authority. *IT-Davy*, 74 S.W.3d at 855.   This type of declaratory judgment action simply seeks to compel state officers to act within their official capacity and does not attempt to subject the State to liability, so immunity is not applicable.  *Id.*  On the other hand, declaratory judgment actions against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are considered suits against the State and may not be imposed without explicit legislative permission. *Id.*; *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 840 (Tex. 1958).

In their second amended petition, appellants requested that the trial court declare the following:

> a.   The City is without authority to charge the District and the Authority for storm water and drainage services;
>
> b.   The District and the Authority are exempt from future storm water and drainage charges charged by the City;

11

c. The District and the Authority are entitled to be free from imbedded charges for services that are not provided to them;

d. The District and the Authority are entitled to recover their attorneys fees and reasonable costs incurred in connection with the bringing of this suit.

In their brief on appeal, appellants describe their claim for declaratory relief more concisely: "The District and the Authority seek declaratory relief in the form of a refund of the illegally collected storm water and drainage service charges they paid as a result of fraud or mutual mistake, and seek attorneys fees and costs." Appellants note that sovereign immunity "will not defeat a claim for declaratory . . . relief seeking the refund of illegally collected taxes or fees if the plaintiff alleges 'that the payments were made as a result of fraud, mutual mistake of fact, or duress, whether express or implied.'" *Gatesco, Inc. v. City of Rosenberg*, 312 S.W.3d 140, 144 (Tex. App.–Houston [14th Dist.] 2010, no pet.) (quoting *Tara Partners, Ltd.*, 282 S.W.3d at 571-75; *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 876-79 (Tex. 2005)); *see Austin Nat'l Bank of Austin, Tex. v. Sheppard*, 123 Tex. 272, 279, 71 S.W.2d 242, 245-46 (1934) ("A person who voluntarily pays an illegal tax has no claim for its repayment. . . . A person who pays an illegal tax under duress has a legal claim for its repayment. . . . Duress in the payment of an illegal tax may be either express or implied, and the legal duty to refund is the same in both instances.").

On the other hand, the City contends that, regardless of what was specifically alleged, the underlying nature of appellants' request for declaratory relief is a demand for money damages. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 370-71 (Tex. 2009) (noting that the UDJA does not authorize circumvention of sovereign immunity by

12

characterizing a suit for money damages as a declaratory judgment claim). We agree that appellants' requests for declaratory relief are merely disguised attempts to collect money damages from the City. The UDJA does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature. *Id.* at 371 (citing *IT-Davy*, 74 S.W.3d at 855; *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994)). Here, appellants' declaratory judgment action seeks clarification of the parties' rights under the contracts at issue; accordingly, they constitute attempts to "enforce performance of a contract" and are barred by sovereign immunity. *See IT-Davy*, 74 S.W.3d at 855; *W.D. Haden Co.*, 308 S.W. 2d at 840.

Appellants appear to argue that these requests instead seek clarification of the parties' rights under the Municipal Drainage Utility Services Act (the "MDUSA"). *See* TEX. LOC. GOV'T CODE ANN. §§ 552.041-.054 (Vernon Supp. 2010). Specifically, appellants argue that the City lacked the authority under the MDUSA to impose charges for storm water or drainage services on customers outside the City's corporate limits. Such a request would not be barred by immunity because it would merely "seek[] to compel [the City] to act within [its] official capacity" and would not attempt to impose liability on the City. *See IT-Davy*, 74 S.W.3d at 855; *see also Heinrich*, 284 S.W.3d at 371 (construing *State v. Epperson*, 121 Tex. 80, 42 S.W.2d 228, 231 (Tex. 1931)) ("[W]here a statute or the constitution requires that government contracts be made or performed in a certain way, leaving no room for discretion, a suit alleging a government official's violation of that law is not barred, even though it necessarily involves a contract."). However, in their live pleading before the trial court, appellants did not

allege that the City violated the MDUSA or any other statute.[6]  Therefore, the trial court had no choice but to consider appellants' claims for declaratory relief as attempts to "impose contractual liabilities" on the City; accordingly, those claims are barred by sovereign immunity.  *See IT-Davy*, 74 S.W.3d at 855; *W.D. Haden Co.*, 308 S.W. 2d at 840.

### 2.    Constructive Trust Claim

In their second amended petition, appellants alleged a cause of action for "unjust enrichment and constructive trust," claiming that their "property (monetary resources) has been obtained by the City through misrepresentations and concealments," that "the City has been unjustly enriched by its deleterious actions," and that appellants' money "has been held in constructive trust for their benefit and must be returned to them." Appellants argue that this claim is authorized under the Texas Tort Claims Act ("TTCA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-.109 (Vernon 2005).  However, appellants neither alleged in their pleadings nor established by evidence that they satisfied the mandatory prerequisites for suit as provided in the TTCA.  *See id.* § 101.101 ("A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. . . .").  Because appellants have not pleaded facts affirmatively showing that the trial court has jurisdiction, the trial court did not err in granting the City's plea to

---

[6] We note that, in any case, the MDUSA appears to be inapplicable because, as appellants concede, the governing body of the City never adopted the provisions of the statute as provided by law. *See* TEX. LOC. GOV'T CODE ANN. § 552.045 (Vernon Supp. 2010) (providing that "the governing body of the municipality, by a majority vote of its entire membership, may adopt [the MDUSA] by an ordinance that declares the adoption and that declares the drainage of the municipality to be a public utility"); *see also id.* § 552.054 (Vernon Supp. 2010) (stating that "[t]his subchapter does not: . . . preclude a municipality from utilizing revenues, other than drainage utility revenues, for drainage purposes; or . . . preclude a municipality from imposing impact fees or other charges for drainage authorized by law").

14

the jurisdiction with respect to this claim. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446; *Davidsaver*, 320 S.W.3d at 473.

### 3. Constitutional Takings Claim

Appellants also argue the trial court erred if it found that the City retained sovereign immunity as to its constitutional takings, or inverse condemnation, claim. Article I, section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." TEX. CONST. art. I, § 17; *see Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). To establish a claim under this provision, appellants must show that (1) the State intentionally performed certain acts (2) that resulted in a "taking" of property (3) for public use. *Steele v. City of Houston*, 603 S.W.2d 786, 788-92 (Tex. 1980). The doctrine of sovereign immunity does not shield the State from an action for compensation under the takings clause. *See Little-Tex*, 39 S.W.3d at 598; *Steele*, 603 S.W.2d at 791. Whether particular facts are enough to constitute a taking is a question of law. *See Little-Tex*, 39 S.W.3d at 598; *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex. 1998).

Appellants allege the following in their second amended petition:

> [T]he City intentionally performed an act or acts, that is, charging Plaintiffs for storm water and drainage services not provided to either Plaintiff. Those charges resulted in the taking of the District's and the Authority's property—their monetary resources—without their consent. The property was taken from the District and the Authority for use by the City, and thus the public.

Accepting appellants' allegations as true, *see Miranda*, 133 S.W.3d at 228, we nevertheless find that the City did not have the requisite intent for appellants to establish a takings claim. A government entity lacks the requisite intent to support a claim under constitutional takings jurisprudence when it merely takes or withholds property from an entity in a contract dispute. *See Little-Tex*, 39 S.W.3d at 598-99. In such a situation, the government entity does not have the intent to take under its eminent domain powers; rather, it only has an intent to act within the scope of the contract. *Green Int'l Co. v. State*, 877 S.W.2d 428, 434 (Tex. App.–Austin 1994, writ dism'd). In other words, when the State acts "within a color of right to take or withhold property in a contractual situation, [it] is acting akin to a private citizen and not under any sovereign powers," and so a takings claim will not lie. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007) (quoting *Little-Tex*, 39 S.W.3d at 599); *see also Brownsville Pub. Utils. Bd. v. Coatings, Inc.*, No. 13-07-00530-CV, 2009 Tex. App. LEXIS 1883, at *13 (Tex. App.–Corpus Christi Mar. 19, 2009, no pet.) (mem. op.) ("[E]ven if the governmental entity's interpretation of the contract under which it acts is wrong, if its claim is made under a *color* of a contractual right, the requisite intent is lacking."). Because the elements of a constitutional takings claim have not been alleged by appellants, the City's sovereign immunity has not been waived with respect to this claim.

### 4. Breach of Contract Claim

Finally, the City contended in its plea to the jurisdiction that it is immune to appellants' breach of contract claims. In their second amended petition, appellants argue that the City's immunity with respect to those claims has been waived: (1) under subchapter I of chapter 271 of the Texas Local Government Code, *see* TEX. LOC. GOV'T

16

CODE ANN. §§ 271.151-.160 (Vernon Supp. 2010); (2) by entering into a contract to perform a proprietary function, *see Gates v. City of Dallas*, 704 S.W.2d 737, 738-39 (Tex. 1986) ("Contracts made by municipal corporations in their proprietary capacity have been held to be governed by the same rules as contracts between individuals."); and (3) by its conduct, *see Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 n.1 (Tex. 1997) ("There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts.").

We first address waiver of immunity under the local government code. The Legislature enacted section 271.152 of the local government code "to loosen the immunity bar so that all local governmental entities that have been given or are given the statutory authority to enter into contracts shall not be immune from suits arising from those contracts." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010) (citing *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006)). "As supporters of the Bill explained, blanket immunity from breach of contract claims 'create[d] a fundamentally unfair situation that denie[d] redress, for example, to a contractor who completed a project for a city that refused to pay.'" *Id.* at 838 n.7 (quoting House Research Organization, Bill Analysis, Tex. H.B. 2039, 79th Leg., R.S. (2005)).

Section 271.152 provides as follows:

A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of

17

adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE ANN. § 271.152. A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." *Id.* § 271.151(2).[7]

The City argued in its plea that the contracts at issue here are not subject to the section 271.152 waiver because they "do[] not provide for any goods or services to be provided to the City. In fact, the only goods being delivered under the contracts are water flowing from the City to the [appellants] for which the [appellants] must pay the City." In response, appellants contend that the Texas Supreme Court has taken an "expansive view" of the section 271.152 waiver under which "all local governmental entities waive immunity from suits arising from the contracts they enter [into] regardless of whether goods and services were provided *to or from* the local governmental entity."

*See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 327.[8]

---

[7] It is undisputed that the contracts at issue are written and "stat[e] the essential terms of the agreement." *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2) (Vernon Supp. 2010).

[8] In *Ben Bolt*, the supreme court considered whether section 271.152 effectively waived the immunity of a state-sponsored self-insurance fund (the "Fund") when one of the Fund's members, a school district (the "District"), sued the Fund after the Fund denied a claim for benefits under the District's insurance policy. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 322 (Tex. 2006). The Fund argued, as the City does here, that the contract at issue is not a "contract subject to this subchapter" because it did not call for goods or services to be provided *to* it. *Id.* at 327. The supreme court disagreed, noting that the Fund's members, including the District, "elect [the Fund's] governing board, and a board subcommittee resolves claims disputes. To that extent, at least, the Fund's members provide services to the Fund." *Id.* The Court then concluded:

> Because the Fund is a "local government entity" as defined by Section 271.151(3) and "was authorized . . . to enter" and did in fact enter into "a written contract stating the essential terms of the agreement for providing [insurance] services to [a] local governmental entity," which agreement was properly executed, . . . we conclude that the statutory waiver applies to this insurance-coverage dispute.

*Id.* at 328 (brackets and first ellipsis in original).

18

We need not determine whether the waiver of immunity in section 271.152 is applicable to contracts calling for the provision of goods and services *from* a local government entity, because the contracts at issue here clearly call for the provision of goods and services *to* a local government entity, as explicitly contemplated in the statute. The statute defines "local governmental entity" as including any "special-purpose district or authority, including any . . . water improvement district, water control and improvement district, water control and preservation district, . . . [or] conservation and reclamation district. . . ." TEX. LOC. GOV'T CODE ANN. § 271.151(3)(C). Both appellants are "local governmental entities" under this definition, and, as the City acknowledges, the contracts at issue call for goods and services to be provided to appellants. The contracts at issue are therefore "contracts subject to this subchapter," and consequently, any party to the contract that is a "local government entity"—such as the City, *see id.* § 271.151(3)(A)—"waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract." *Id.* § 271.152.

The City additionally argued in its plea and on appeal that section 271.152 does not effectively waive its immunity to appellants' breach of contract claims because appellants have not requested damages recoverable under that statute. *See id.* § 271.153 (limiting recoverable damages to "(1) the balance due and owed by the local governmental entity under the contract . . . (2) the amount owed for change orders or

According to appellants, the *Ben Bolt* decision represents a "expansive view" of section 271.151(2) under which the provision of goods or services to *or from* the local government entity being sued would make the contract "subject to this subchapter." Therefore, according to appellants, the services provided *by the City* cause the contracts at issue to come under the purview of the section 271.152 waiver. In the alternative, appellants argue that the contracts at issue did in fact call for appellants to provide certain "services" to the City. We need not address these arguments because of our conclusion that the contracts at issue are subject to chapter 271 because they call for services to be provided *to* appellants, which are also local government entities. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(2).

19

additional work . . . (3) reasonable and necessary attorney's fees . . . and (4) interest as allowed by law" and stating that consequential and exemplary damages are not recoverable). However, in *Kirby Lake*, the Texas Supreme Court rejected a similar argument, noting that "the purpose of section 271.153 is to limit the amount due by a governmental agency on a contract once liability has been established, not to foreclose the determination of whether liability exists." *Kirby Lake Dev., Ltd.*, 320 S.W.3d at 839-40; *but see Tooke*, 197 S.W.3d at 346 (holding that defendant city's immunity was not waived because plaintiffs sought only lost profits, which are consequential damages that are not recoverable under section 271.153). In any event, we disagree with the City's characterization of the damages sought by appellants. In their second amended petition, appellants alleged that the City wrongfully charged them for services that were never rendered, and they requested "[d]amages for the City's conduct relative to its contracts with the District and the Authority in the amount of the illegal charges improperly assessed against them, in contravention of the parties' rights and obligations under th[e] agreements." Taking appellants' factual allegations as true, *see Miranda*, 133 S.W.3d at 228, we conclude that the damages sought constitute an alleged "balance due and owed" by the City. *See* TEX. LOC. GOV'T CODE ANN. § 271.153. Therefore, assuming but not deciding that appellants were required to plead damages recoverable under section 271.153 in order for immunity to be waived under section 271.152, we find that appellants have pleaded such damages. Accordingly, the City's immunity has been waived with respect to appellants' breach of contract claims.[9]

Appellants' second issue is sustained in part.

---

[9] Having determined that the City's sovereign immunity has been waived under section 271.152 of the local government code, we need not address appellants' additional jurisdictional arguments regarding waiver by proprietary contract and waiver by conduct. *See* TEX. R. APP. P. 47.1.

## C.    Denial of Motion for Leave To File Third Amended Petition

After the trial court rendered the judgment on appeal, appellants filed a "Motion to Reconsider Granting of Plea to the Jurisdiction and Motion for Leave to File Amended Petition." Attached to the motion was a copy of appellants' proposed third amended petition. Appellants assert on appeal that, while their second amended petition "fully articulated their claims and jurisdictional grounds against the City," they sought leave to file a third amended petition "[i]n an abundance of precaution . . . to assert with greater particularity their allegations of fraud and mutual mistake to support their declaratory judgment/constructive trust/unjust enrichment action."

If a plaintiff's pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead. *Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007). However, a pleader must be given an opportunity to amend in response to a plea to the jurisdiction only if it is possible to cure the pleading defect. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). Upon reviewing appellants' proposed third amended petition, we conclude that the allegations contained therein would not have cured the jurisdictional defects in appellants' declaratory relief, constructive trust, and constitutional takings claims. Therefore, appellants have not shown that they were harmed by the trial court's denial of their motion for leave to file a third amended petition. *See* Tex. R. App. P. 44.1(a). We overrule appellants' third issue.

## IV. Conclusion

We reverse the judgment of the trial court dismissing appellants' breach of contract claims for lack of jurisdiction under section 271.152 of the Texas Local

21

Government Code.  We remand those claims to the trial court for further proceedings

consistent with this opinion.  The remainder of the trial court's judgment is affirmed.


                                                    _____
                                                    DORI CONTRERAS GARZA
                                                    Justice

Delivered and filed the
13th day of January, 2011.